LLC. We'll hear from Mr. Terazis. Your Honors, Counsel, may it please the Court. There are four reasons why the final judgment in this case was an error. First, the final judgment improperly awards Mr. Ramsey a double recovery in regards to the interest from the date of suit until the final judgment. And Mr. Ramsey elected to have the statutory pre-judgment interest apply. And therefore, the final judgment in terms of the actual damages awarded should have been $119,763.38 with pre-judgment interest attaching. Are you asking for a remititure? Yes, Your Honor. We believe that the actual damages for the breach of contract that Mr. Ramsey was awarded should be $119,763.38. And then pre-judgment interest should attach. Otherwise, Your Honor, if you were not to do a remititure, then we believe that the pre-judgment interest should not apply at all. Well, do we order a remititure? Or if we agree with you, we may not. Or is that an option for the other party? I'm sorry, Your Honor. We order a remititure? Or is that an option? I mean, someone receives a jury verdict with a certain amount, it's upheld on post-trial motions. Isn't that an option that you give to the party with the award? Yes, Your Honor. Normally, it is. But here, they have not accepted the . . . we've offered this and requested it. They have not. I do believe that that's an option for the court to say that they can accept a remititure or it has to go back. But here, I think that the district court could have and this court can, based on the evidence, determine that the actual amount in actual damages, it's not really necessarily a remititure because it's just an error. A remititure often is, as I've seen it, is that there's too much evidence that's been awarded for personal injury damages and those type of things and that they can accept a remititure or it can be a new trial. Here, there's just factually insufficient . . . excuse me, legally insufficient evidence to support the $155,000 that was awarded, in some change, awarded in the final judgment. I think you may still be in your section of listing the four issues you wanted to address. I'm not sure, but let me proceed this a little bit more. It does seem to me there's a question of whether this issue was properly presented to the district court, whether the argument, is the argument you're making now exactly what you made in the district court? Yes, Your Honor. What we told the district court was that there was not evidence to support the $155,000 that as of the date of the case was filed, which was March 1st, 2021, that the damages there were $119,763.38. And the point that some of that was, in effect, pre-judgment interest and that you, District Judge, have given them pre-judgment interest a second time. Yes, Your Honor. And we presented that both in objections to the final judgment and in our motion for new trial. Proceeding. Yes, Your Honor. On the second point, and I'm happy and I will go into a little bit more on the pre-judgment interest, the second point is that the finding or the judgment that there was an excused breach by Mr. Ramsey is improper because any breach by Mr. Ramsey had to occur prior to any breach by Sheetpile because the only breach by Sheetpile that was found was the failure to pay the $5,000 for his final paycheck, which would have occurred on January 10th, 2020, or no earlier than then, and yet all the breaches by Mr. Ramsey had to have occurred prior to that because it was things involving his job performance, which after his termination, when the pay was due, had to happen before, as well as his withholding or retaining of confidential information of Sheetpile. And that had to occur prior to that final paycheck, which happened a few weeks later. Third, the court should have awarded damages to Sheetpile for Mr. Ramsey's breach because it was, there was unrebutted testimony in terms of . . . Let me go to that one. What relief do you seek for that asserted error? In terms of the prior matural breach, Your Honor? Your Honor, we believe that the jury question should be disregarded, and on that one, it flows into the third issue, which is that damages should be awarded to Sheetpile for its breach because if it wasn't excused, then that means that Sheetpile would have damages and there is unrebutted testimony about the amounts of damages, as well as the different types of damages that should have been awarded at that time. So what are you asking for? Are you asking us to send it back for a new trial on that? Or are you, because that's not a . . . No, Your Honor, we . . . It is, Your Honor, because we believe that the damages testimony that was presented was unrebutted such that there is no evidence in contrast to what damages Sheetpile incurred because of those breaches. And so we believe that the court can do an aditure in this limited circumstance such that it doesn't have to go back. If Your Honors disagree with that, then we are asking for a new trial. So what is the amount that you seek on the 2 and 3 put together? So Your Honor, on the 2 and 3, I don't have the exact amount. I believe it's around $900,000 in there. It's an accumulation of damages. There's $45,000 . . . Well, if you wanted us to do an aditure, you're going to have to tell us exactly what it should be, aren't you? Yes, Your Honor, and I believe we have it in our briefing exactly. Okay. Okay. So the other option is we send it back, if you're right, on arguments 2 and 3 together. But 3 is dependent on being right on 2. Absolutely, Your Honor. Absolutely. Because if it's excused, then there's no breach or there's no viable breach that damages could . . . It's a breach, but not an actionable. That's right, Your Honor. Not in terms of damages for that. Number 4. Yes, Your Honor. On number 4, the district court should have issued a limited injunction. And, Your Honor, we're not asking for anything other than Mr. Ramsey return all confidential information that he kept after leaving Sheet Pile and for him not to use any confidential information of Sheet Pile going forward. Is that still an issue? Yes, Your Honor. He still has the confidential information. We asked for the district court to order it to be returned and he has not. Did he . . . did the district court rule against you or they just . . . you didn't get a ruling on it? They . . . he denied the injunction, Your Honor. But to return the materials? Yes, Your Honor. The ruling was that he didn't need to return the materials because they're not privileged or the company or trade secrets or whatever? No, Your Honor. He just simply did not allow the relief. We had requested it again in the . . . Was there any response to it or did the district court just ignore your request? I don't know if you could say the district court ignored our request, Your Honor. It denied the request, did not include it in the final judgment whenever we requested that. Did you seek further relief after that and say, whoa, you forgot about this? Yes, Your Honor. In the motion for new trial, we requested it as well and I believe . . . and they . . . the court did not order an injunction. Counsel, you said it gave no reason. Shouldn't the district court say in some form on sheet pile failed to show a likelihood of future disclosure on the . . . And, Your Honor, I don't remember specifically on that, but . . . I mean, basically, Hale, you don't need an injunction if you haven't shown the necessity for it. And that's a factual determination that we would review under some standard, like abuse of discretion. Yes, Your Honor, and what I would say is that in this case, as for an example, Plaintiff's Exhibit 10, one of the exhibits that Mr. Ramsey put forward, which was on page record 3927 through 36, those are invoices to a customer called Samuel Roll Form Group that include pricing information, product information, customer information. And the testimony at trial for Mr. Wendt was that that was an exclusive customer through April of 2020. Mr. Ramsey left in December of 2019. He joined with Steelwall, the primary competitor of sheet pile, in sometime around February, maybe even January of 2020. I thought there was an absence of evidence that he actually was employed by this other company. Your Honor, you were . . . And the question about disposition was to your competitor? Your Honor, he was receiving a paycheck, $4,000 at least a month, starting in February of 2020. Am I right that at least there is, I don't know if the district court noted it or is the argument by opposing counsel that there's not evidence that he was actually employed by them? Your Honor, what he had argued was that he was a consultant through his business, but that that was the only customer he had. On what are you arguing is the obligation based to return anything that he hasn't already returned? Initial employment agreement? Yes. Sorry, Your Honor. Did you say what he had already returned or that he hasn't returned yet? Well, that you're saying needs to be returned and consequently has not been returned. From what are you drawing that obligation? Yes, Your Honor. It's from the employment agreement that said specifically that when he is terminated, if he leaves, he needs to return all confidential information of sheet piles. It says all of your company's property. Isn't that how it's put? I believe it is. Yes, Your Honor. It seems to me there's a factual question. I mean, he can't return what is in his head, what he knows about your systems and whatever else. So it's any property that he had that was your company's and I thought the argument was he had returned any actual property and that was something the district court had to sort through. So, Your Honor, in terms of property, what he had was documents. I mean, Mr. Ramsey wasn't given a computer. He wasn't given equipment. He returned some documents. He did, Your Honor. Yes, absolutely. But again, like Exhibit 10 is an example of documents he did not return. They retained with him while he was working with and for Steelwall. Are there actual physical documents that he was using at his other company? And that's where I guess we're going to ask the other side that because they're shaking their head no, although that's probably not the best form. But so because if that's true, then that obviously is a problem because you shouldn't be having physical documents that you've kept with you that are about the company's business. If that's. Absolutely, Your Honor. So that's a friendly question, I guess. Yes, Your Honor. And again, I would point the court to exhibits, plaintiff's exhibits 4, 5 and 10, which these are documents you'll see they're bait stamped Ramsey, that they're in Ramsey's possession during the lawsuit that he produced and that he used at trial, put forward at trial, and that's on pages 3908 is Exhibit 4, 3909 is Exhibit 5, and 3927 through 36 was Exhibit 10. There's others as well, but those are just examples of supplier agreements for products. There are invoices. There are other things that Mr. Ramsey admitted were confidential information, as did Mr. Humphrey Chang in his testimony admitted that all those things are confidential information that he at Steelwall, Mr. Humphrey Chang is the CEO, president, I'm not sure where, the head of Steelwall and said all that information was confidential. He would not want it shared with a competitor. Counsel, let me get you back to whatever number issue it was. It's talking about who breached first. There was a jury instruction in addition to the interrogatories that was very neutral, it seems to me. The instruction did not set out that if you find a particular party, meaning name the party, breached first, here's the result. It just said generically, a failure to comply by a party is excused by the other party's previous failure to comply with the material obligation of the same agreement. So it was in front of the jury. Your argument, I think, is that he was a poor accountant and he didn't do your business much good. His argument on the breach had to do with the last payment of $5,000 and when did he start to work for any other company was a factual issue. I think January 10th versus January 20th of the next month is some evidence in record. It seems to me the jury had your argument and being a poor accountant, if he was, is not necessarily a breach of a contract and the jury was entitled to decide that. What do you say to that? So two things, your honor. One is that in terms of the breach itself, there were things that he wasn't doing. It's not just being a poor accountant. There's things that he wasn't doing that he was required to do. That's one of the breaches. The second breach is continuing to possess and not return confidential materials, which he was required to return immediately upon his termination. That would have been December 31st, 2019. That's right, your honor. And what we're talking about is some other event that happened on January 10th. It seems to me how soon he had to return that. Fired on a certain day, gets in his whatever car and races to the company and returns the property. I could see the jury saying that's not quite how it works. Well, but your honor, a couple of things is that the jury did find that there was a breach. So it wasn't that the jury said there isn't a breach because of a prior action by sheetpile. The jury did find a breach. It just said that that breach was excused because of a prior breach of sheetpile. But it couldn't have been prior. But it wasn't necessarily the breach of being a poor accountant and the other things that you're talking about. It could be a later breach of not returning the property. It can't be a later breach, your honor, in terms of because it had to be according to the jury instructions. It had to be before. No, I understand. But in so far as not returning the property, that breach could have occurred after you had breached. And your honor, I respectfully disagree with that because the obligation was immediate to return. And we're not saying, your honor, that there is a technical breach. We're not saying that, oh, he returned the property on January 30th or something like that. Again, in the record, we have very confidential documents that he retained through the litigation and still has today and has not returned them. I don't understand how that's even possible. I'm sorry, your honor. I didn't mean to interrupt Judge Southwick. I don't understand how the person is keeping this pile of confidential documents all through litigation. Isn't there a protective order in place and all of the normal things? This just seems outrageous. That's why, unfortunately, the trend now is to escort people off the property and have them all locked down. And that's not always very polite because we don't want people taking and squirreling away documents. How is this even possible? Well, and your honor, it's even worse because Mr. Ramsey, during the litigation, disclosed all of the documents that we had provided in terms of our entire production, many, many confidential documents to Mr. Daniel Marley, who, in the record, his testimony is that he was a screenwriter. Now, of course, Mr. Marley is someone who used to work for Sheet Pile or its predecessor, Palpro, years and years before and who had been corresponding with or talking with Steelwall during the time. Did you adjudicate the alleged breaches of the protective order fully and all the way through with the district court? Your honor, we didn't know about the breach of the protective order. We did throughout, but we didn't know about the breach with Mr. Marley until they submitted their request for attorney's fees. And then we saw that in their request. And then is there some action still pending on that then? No, your honor, we raised that to the district court as part of the reason why we needed an injunction, and the district court said no. Let me go back to your basic contract with this employee. What did you put into the contract itself with regard to restricting his activity and protecting your confidential information? Normally, your employment contract can have a provision for that, and you're suing to enjoin working for somebody else. And your honor, I see I'm out of time. I'd like to, if I may answer your question. You're good on my time. Go ahead. Thank you, your honor. So, your honor, we had in the contract, the provision was that he had to return all of his confidential information upon termination. The contract says that. Yes, your honor. Does it say property or does it say confidential information or trade secret? It's the same paragraph as confidential information and trade secret. It says all the company's property, your honor. I don't have a copy of the contract. I've not looked at that, I would say, but I would anticipate that in a routine matter of business that you're going to have a separate provision with regard to confidential information. In other words, you're going to address that as a single topic, an explicit topic, not buried in some other provisions. Right, and your honor, it is in that same paragraph of what it's talking about in terms of confidential information, but what I would say is, is that. What does it say? It describes how he's going to be, he's going to receive confidential information during this time, trade secret information, and that upon his termination, he needs to return all the company's property. And that's consideration and all of that, like under the Texas law on how that all works. Yes, your honor, and they don't argue otherwise in there, but. Where is that document? Your honor, it is on page record 38, I believe. No, I'm sorry. It is on. Are you talking about the employment contract? Yes, the employment contract. Yes, your honor, I'll quote the paragraph to you. All it says is employee agrees to return any property of employer or any companies controlled, managed, etc. by employer at the time of his termination. So the contract no doubt talks about confidential and information and whatever, but the provision specifically talks about the property. And so it's a matter, it seems to me, the district judge resolved in some way. Well, it's up to the chief of whether you're done, but I consider my questions answered and we do have time for rebuttal. Thank you, your honor. If I just may, I'm sorry to finish your honor's question real quick. There isn't a necessity to have a separate provision that says you can't use the property afterwards because if you're required to return it all, then you shouldn't have it to be able to use. Your honor, thank you. You saved time for rebuttal. Thank you, judges. Forgive me if I moved my head. I really deeply apologize. I do want to correct a couple of things. First of all, on the record, pages 3096 to 3097, Mr. Ramsey expressly testified that he returned all of Sheetpile's documents, electronic files, and property in his possession within two weeks of termination. I would also- I thought you said two weeks? Two weeks. Well, then what is this stuff he still has and that he's sharing with MUBI people and stuff? To be very clear about that, the one and only person that appears to have received any document is the person that was serving as a legal assistant in this litigation on behalf of Mr. Ramsey. So why should he have any documents to give the legal assistant? He shouldn't have those documents and you would have to- the lawyer would have to request those from the company. He shouldn't have had those documents. Judge, a couple of responses to that. First and foremost, we have to go back to the contract. And the contract does not require a return of all confidential information on every single document. And they are not connected at all. So you'll see on page 3904 of our record paragraph 5 talks about termination. And then in D, it says the employee agrees to return any property of employer or any companies controlled, managed, owned, or affiliated with employer at the time of termination. That's D. Separate and apart is paragraph 6. Paragraph 6 is entitled non-competition-slash-disclosure. And then we go- the one and only paragraph that addresses anything about confidential information is paragraph 3, which- where the employee just agrees that he is being provided highly confidential trade secret and proprietary information from employer and that access to such confidential trade secret- so on and so forth. There's nothing in that paragraph that in any way is connected to paragraph 5D. The connection would be if that confidential information is in property of the company. So why isn't that parallel? And the evidence is that Mr. Ramsey returned all that information. Now how- this document that they identify is litigation material. It's material that was provided during the litigation. But it's material that was created by the company? And- thank you, Your Honor. Yes. And there is also evidence- Why isn't that the company's property? It- it is potentially the property of the company in the sense that it is confidential information. It- that was, in fact, returned. That information was returned. That document was returned. Apparently there may have been a copy of a few of these documents, which were- and the evidence in this case is solely that it was shared with a legal assistant during this litigation. It's an indication that your client shared it, meaning he had it in his possession, meaning the property of the company was a copy. And- You're arguing that I can make a copy of the company's property. And I- It would be my personal copy. Thank you, Your Honor. And let me go back and point out that this record also contains record evidence through testimony that Mr. Wendt himself said that much of this, what he's now calling confidential information, has already been in the hands of competitors before even Mr. Ramsey left employment. But let's go back. Let's go back and say- Judge, if you don't mind me saying this. This obligation falls under the employment agreement. The jury found that any breach by Mr. Ramsey that will have occurred to the employment agreement occurred after his termination, because the jury found that a prior material breach occurred by cheat pile. So what does that mean? It doesn't matter. For the documents, it's still- Are you saying that all bets are off and he can go off and be with competitors and he can put all the documents on the internet and if they have a breach, then he can just do whatever with the trade secrets of the company? I don't think that's the law. I would say- What I would say is the jury decided and the parties argued what the material breaches were. And what was asserted at trial were five different material breaches. The very last one was conduct after his termination. And the jury decided based on the instructions to the- And the language itself was not complained about. The actual terminology of the prior material breach. In fact, I think they used language that was either in the Fifth Circuit pattern or in the pattern jury charge, which says that if there is a prior material breach, that any breach by Mr. Ramsey after cheat pile's breach is excused. Okay. So you're saying he can do whatever he wants with these documents because they the contract. Is that what you're saying? That is what I'm saying because there was a prior- That is what the jury decided and that is how he- That is the law. Is that the law? That he can do anything he wants with documents that are trade secrets if the other side breaches the contract in a material way beforehand? Number one, what we do know is that the law is what the, for a particular case, is what the jury charge says and how the jury charge is submitted to the- Is that the answer to my, can you answer my question? Oh, well, I would say there is a common- Can he do whatever he wants with the documents as long as the other side breached first? That's the question. In following Texas law, there's a common law obligation to maintain the confidentiality of the information. So is the answer no, he is still not at liberty to put the documents on the internet or to give them to a movie producer or a paralegal? Under the common law, and I would say as to a legal assistant, that is something quite different for the purposes of litigation, especially when there was a protective order in place. But judge to- My answer to your question is, under Texas law, you are right. Under the law of this case as submitted to the jury, no. Counsel, let me ask you, we may be talking about two different things. We started this discussion on whether it was appropriate not to issue an injunction to require the return of whatever you want to call it, property is what the employment agreement calls it, which would include confidential information, whether it's otherwise, it would seem to me, but you can argue otherwise. So that's a separate issue from whether the jury got right on how to work the breaches out and whether his returning what he says is all documents within two weeks after December 31st and they breached on January 10th, so their breach predates the two week later, two week after, into the year breach. It seems to me that all gets into liability and who owes what money. That doesn't affect, maybe, that's out of place, but it doesn't affect whether he needs to return all documents, including copies. So focusing just on that, it does seem to me if he has copies of property of his former employer, arguably the employment agreement required him to return those or not to have made them in the first place. You got a defense to that? Two things. Which would mean the injunction probably should have been granted. Yes, the injunction is reviewed based on abuse of discretion. So the trial judge who reviewed all the evidence and was present during the entire trial was the person who determined whether it was appropriate to issue an injunction. There was no evidence that any confidentiality, and Judge Elrod, I want to make this very clear, there was no evidence presented that any confidential information was divulged to anyone other than this legal assistant who was participating in helping Mr. Ramsey defend himself in this litigation, where the other side was saying that there was confidential information that had been, in fact, produced or given to a competitor. I think you're off point here, but with all due respect, I'm asking whether and regardless of who he gave the information to and didn't share with competitors or not, did or did not, the question is, did the district court err in not requiring property to be returned? And he's got property that I haven't heard you say it's not the property of the former employer. You're only saying it may be copies, and he didn't share it very widely or whatever, but that's not the issue. The issue is, should the injunction have been issued to return everything that he has that was the property of his former employer? Can you just, isn't that the reality of this record, that he does have such property? He hasn't returned it, and therefore, why would it not be error to deny an injunction? Number one, because there was no evidence of any irreparable harm. An essential element of a permanent injunction is that there be proof of irreparable harm. And in fact, the evidence in the case was from Mr. Wendt. The only evidence in the case is that there would be no harm because the confidential information, Mr. Wendt himself said, his competitors already had. So that would be an inappropriate, it would not be an abuse of discretion. As I looked at this record, the district court denied injunctive relief because Chief Powell had not shown past disclosure of its confidential information, let alone a likelihood of future disclosure. That's a record of 2748. Your Honor, I agree with that, and that's absolutely true. This record shows that the only disclosure of confidential information was made to Mr. Ramsey's legal assistant. That's a disclosure. But it's not to a competitor, Your Honor, and that's the issue. That's what this says. OK, but that means he still holds confidential documents even today, even though he testified that he had returned everything. Isn't that right? That's a true thing I just said. I think that still holds confidential documents, even though he has testified in court that he gave everything back. When he testified that, is that correct? I think that's correct, Your Honor. But the clarification, of course, is that he had documents for the purposes of the litigation. Counsel, we spent a lot of time on injunction. Why don't we look at some of the rest that is in this case? It seems to me what to make of the jury instruction, and to me, it seems to be the core finding by the jury of who breathes first. Let me make sure I understand. What was done at trial by Sheetal, is it correct that Sheetal at trial was arguing that his actions as accountant breached his contractual duties? Was that presented to the jury in that way? In that way, I would agree with you, Judge. Well, you're pushing back just a bit. What are you not saying? I think it's important for us to frame our analysis. There were two contracts, a promissory note and an employment agreement. The employment agreement, per the instruction that was submitted by Sheetal, was that the employment agreement began August 27, 2019. There was a significant amount of time that Mr. Ramsey worked for Sheetal prior to the written employment agreement that is the subject of the breach of contract claim. The only term and the only conduct that could serve as a breach of contract would be conduct that occurred between August 27, 2019 and December 31, 2019. What did the jury have in front of it, presented by Sheetal, that your client was breaching his obligations under the contract before December 31? I would argue nothing, Your Honor. What they will come back to you and say is that Ms. Mentier came in and testified that throughout 2019, or without specifying any specific date, she said that Mr. Ramsey did not perform all the work that he was supposed to do, or he didn't perform the work correctly in QuickBooks. Are you arguing even if that's true, that that's not a breach of the contract? If that's correct, for two reasons. Number one, it was their obligation to specify when these occurrences, when these failures to correctly perform, in other words, whether those were during the term of the employment agreement, and they did not meet that burden. Secondly, that complaint is not with Mr. Ramsey not performing. Remember, this employment contract says he's supposed to perform as a CFO. The complaints that they're really making here are complaints that Mr. Ramsey may not have met the standard of care. Well, that's not a breach of contract, as this court well knows. They could have chosen to assert that claim and sought to recover for that claim under negligence. They, and they did assert a negligence claim against Mr. Ramsey, and they did recover for that. But the breach of contract has to be for whether Mr. Ramsey indeed performed his job as a CFO from August 27th to December 31st. And the evidence in this case is absolutely uncontroverted that Mr. Ramsey did indeed perform his tasks as CFO during that time period. Even if it was controverted, then Mr. Ramsey testified himself multiple times that he loyally and fully performed all of his duties as a CFO during the term of the employment agreement. And as this court knows, if you disagree with us on plain error, which we believe that they did not do a satisfactory 50A and have to follow the plain error standard, but as Judge Higginbotham recently said, if it's not plain error, then we're talking about legal sufficiency. So the jury's call on the credibility of the witnesses is for the jury. The jury's weight that they give to evidence is for the jury. All reasonable inferences need to be made in our favor. And then if there's the only time to reverse the jury's finding that Mr. Ramsey performed his duties pursuant to the employment agreement, he served as CFO, he did CFO duties, he handled invoices, all the jobs of a CFO, which are not just to enter things in a QuickBook. There's a ton of other work, and this is in the record that Mr. Ramsey testified to, that he was supposed to do as CFO. And he did that during that entire time. In response, we have Mr. Wendt, who says he didn't do his job. We have Mr. Mentier, who says he didn't do his job well enough. At most, you have a disputed question of fact that the jury got to decide. This is in the province of the jury, and that should be affirmed as a matter of law. Okay, can we talk about, go ahead. You may be raising the same thing. Why don't we move to the pre-judgment interest? Yes. If we agree with opposing counsel that this really is double recovery of pre-judgment interest, so start there, please. Yes. What should we do? That is not a double recovery. I asked you to start that this panel decides that this is a double recovery. What do we do then? Thank you, Your Honor. I'm sorry, I didn't hear you. I do mumble. I apologize. If you decide that the pre-judgment interest is a double recovery, then what this court should do is reform the judgment and delete the award of pre-judgment interest from the judgment. That's the most that should happen here. Isn't that basically what a remediator would have done in district court? No, a remediator, Your Honor. Thank you very much for that question. A remediator is addressing the damages found by the jury. And remember, Sheet Pile has asserted no issue presented and never argued below the legal sufficiency of the jury's damages finding. What the jury did was they found that Sheet Pile did not perform under the promissory note as it was supposed to. And then it went through all the various elements of what Sheet Pile was required to do under the promissory note and determine the damages that flowed from each of those subcomponent breaches. Included in that, which they take exception with in their discussion today, is the late fees that were asserted. And they say that's the double recovery. First of all, it's not a double recovery because pre-judgment interest is equitable. And the late fees were part of the damages that Mr. Ramsey suffered. Do you disagree that pre-judgment interest is actually the contractual interest that accrues between the date of filing and the date judgment was entered? It is not an undetermined, general kind of thing. It is a particular thing under the Texas finance code and the contract. It's not in the contract. But under the Texas finance code. Absolutely. It is a definite thing. It's that amount of money between that time period and that period. And it actually should have been at the Texas rate. But that's a different problem. And nobody seems to have raised that. Right. The rate that was ordered was 5.18. Was based on equity. Not an enabling statute. But actually equity. And as a matter of law, Judge, that's correct. And then pre-judgment interest is awarded based on an enabling statute, which has to be something like chapter 38 of the Texas Civil Practices and Remedies Code that provides for pre-judgment interest on breach of contract claims. We don't have that here. There's also a number of other Texas statutes that provide for pre-judgment interest. If you don't have that in an enabling statute, then it's by equity. And under equity, then what the court looks at is what is the finance code say the interest is? What should the interest rate be? And the finance code simply defines the amount of the interest. So the issue is equity here. And as this, as the Fifth Circuit courts have said, pre-judgment interest. It is contractual interest. It is not some equitable amount in the air. Judge, I have to respectfully disagree with you. Where do you see that in the law? I will see it in, there's a case called, hold on just a second, Judge. I'm so sorry. Let me get that cite for you, which we have cited in our brief. It is an F-3rd. And I know I'm over my time. If you'll give me just a second to get that cite for you. Thank you. You know what? You can, if you don't have it, what? I'm sorry. It's Vacuum Tank, 75 F-3rd, 1048, 1057, Judge. And that's where this court has said, pre-judgment interest should be awarded as a matter of course. It should be awarded in all but exceptional circumstances. No one's saying it shouldn't be awarded. It's the amount of how it should be calculated and whether it's a clear double dipping. I think we have your argument. Thank you. Thank you, Your Honor. I appreciate y'all's time. Let me ask you one question that's not immediately a problem here. But you tried this to a magistrate, Judge. How many jurors were seated? I do not know the answer to that question. But I can find out for you, Judge, and submit that. I want to say it was six. You were on trial counsel? I was not trial counsel. I'm a trial counsel officer. I don't remember that. Thank you. Thank you, Your Honor. Your Honor, thank you. There was 12. And I want to start by just correcting one thing I said before. And I apologize. Record 3732, I had said that the return of confidential information was in the same paragraph. I apologize. That was my mistake. There are two separate paragraphs there. I just want to make sure I apologize and want to be candid with the court there. I want to start with the allegation that Mr. Marley was a legal assistant. On the record 2223 through 24, Mr. Marley specifically testifies that since 2017, he's been doing screenwriting. And he was specifically disclosed as a witness twice by Mr. Ramsey on record 369 and 1346. You can't be a witness and then also be a legal assistant representing in the case. And again, he wasn't being named as a witness to discuss his legal assistant role or anything related to that. In addition, talking about the breaching obligations, one thing of course it's important to note is that Mr. Ramsey does not have a cross appeal here. He is not complaining that the finding of breach by the jury was erroneous. And therefore, he can't come up here and say, no, there was no breach. He hasn't contested that at all. The jury's finding has to stand there. Do you know the answer to Judge Higginbotham's question about the number of jurors and whether they're unanimous? And was it, you know, a four to six or, I mean, four to two and a six person? What was his jury? There were 12, Your Honor. There were 12 jurors? There were 12. It was unanimous? I don't remember if it was unanimous. I do not believe it was unanimous. I believe that it was either 10 or 11 in there. And I apologize. I know it's in the jury verdict, which I think is on 1780. Well, I have the verdict form and it doesn't say it's redacted. All the signature. I'm sorry, Your Honor. No, it's OK. But I think if it's all the signatures, then it wasn't unanimous. But I just don't remember if it's 10 or 11 on there. And so, therefore, he breached... It sounds like a 10-2 verdict. What's that, Your Honor? Sounds like a 10-2 verdict. It may have been, Your Honor. I just don't remember exactly if it was 10 or 11. In terms of the breaching of the obligations, Ms. Mentir specifically testified to things of where Mr. Ramsey did breach his obligations. Finally, on the remititure question, if we go to the record 2743, and this is the district court's denial of our motion for new trial, it specifically goes into Sheetpile's objection to the jury's calculation of damages. And the court cites and says that this is what Sheetpile argued, that the court should disregard the jury's answer to the question as to the amount of damages Ramsey should recover because of Sheetpile's breach of the party's promissory note and security agreement. And it says that Sheetpile reasons that the award reflects the jury's mistaken belief that damages should have been calculated based on the date Ramsey filed suit, not at the time of trial. And so this was specifically raised. This was specifically rejected by the district court. We asked them, asked the district court to award only the $119,000. I apologize, Your Honor. I'm out of time here. Thank you. We have your argument. We appreciate the arguments on both sides, and this case is hereby submitted. Thank you, Your Honor. Thank you.